I look forward to your participation. First matter then becomes U.S. v. Calderon-Minchola. Minchola, I guess it is. Good morning. Good morning. Good morning. Excuse me. I have a loud voice, so I have to... Okay, but we have to record you, though, so don't take it too far away. I understand that, but I don't want to... Overwhelm you. ...mess your drums out. My name is Guillermo L. Bosch, and I do represent the appellant, Dennis Segundo Calderon-Minchola. Your Honor, I would respectfully like to reserve five minutes of the 15 minutes allotted to me for rebuttal. Okay. All right? Okay. Yes, sir. Your Honor, this is a matter in which Mr. Calderon-Minchola, after a trial, was convicted. We know the facts, and I assume you understand that under our jurisprudence in Denardy and its continued viability after Booker, we don't have jurisdiction to review the district court's address to you ruling on the motion for a downward departure. Your Honor, you are absolutely correct, and I was not going to argue. Okay, so all reasonableness. That's correct, sir. I am going to focus on the reasonableness argument. The government has stated, and it's correctly stated because it was, in fact, restated in the United States v. Ball decision, of course, that this court sits reviewing the sentencing court under an abuse of discretion standard. And once a court, the sentencing court, the court below, says, well, I have exercised my discretion, and this is the sentence to which I arrive. Well, that doesn't stop your inquiry, merely because the court below has said that it has exercised its discretion. The appellate court still must review whether or not that discretion, which the court below says it has exercised, was reasonably exercised. Here, how wasn't it reasonably exercised? What was the problem? I will say to that. Because Ball also talks about that this court has to look at the exercise of this discretionary power by the court below using the totality of the circumstances. And my argument basically is that the court below reached an unreasonable sentence under the totality of the circumstances. If you look at the five sentencing factors of 3553A, you still have to reach a just sentence. You still have to reach a sentence that's not greater than necessary to achieve the purposes of sentencing. But the sentence varied actually from the guidelines, right? That is correct, Your Honor. And what I'm saying is just because, for example, let's say that the court below, and what the judge found, of course, that the PSR, that the recommended sentencing custody range was 77 months to, I believe, 96 months. But 77 months was the below. And the court below clearly goes under 17 months to issue a sentence of 60 months. Just because the court had ameliorated what I think very unreasonable standards of 2L1.2, which is the advisory sentencing guideline, doesn't mean that that sentence by itself is reasonable because 2L, the punishments. No, we understand that. We said that in Cooper, that a sentence, we don't presume it to be reasonable just because it's in the guidelines. The flip side of that would be that we don't presume it to be reasonable just because it's below the guidelines from your perspective. All right. So then what I'm going to say is you're starting out, and I believe that the sentencing court below, unfortunately, as many sentencing courts are still tied unconsciously, however, to the mandates, which are advisory. But I think in their mind, it's still mandate of the sentencing guidelines. So the court below did not start with what is reasonable for this defendant under these circumstances. I think the court below started with I have 77 months to begin with. That's where I'm saying that, unfortunately, that starting from there, it seems reasonable to go down to only 60 months. What I'm saying under the totality, let's look at the totality. Here's a man, this specific instant offense is totally nonviolent. There's no drugs. There's no rape. There is no guns. In fact, there's not even really an illegal reentry, which is what 2L1.2 was originally designated to punish. We have a gentleman who has a deportation order, which, by the way, he was in the process of fighting, of appealing, had also filed a habeas corpus proceeding in the court in the Eastern District of Pennsylvania, which he was waiting to get. All of a sudden, immigration does not want to wait for that. Whether they were right or not, they present him with a document that says, I'm going to allow myself to be deported, and he refused respectfully, was not violent, did not cuss the agent. All he did is, no, thank you, I am not going to sign that document. Is that document in the record, the actual document itself? Yes, sir. It was introduced as an exhibit at the trial. You're not claiming insufficiency of evidence here, are you? No, sir, I am not. So you admit he's guilty of the charge? Yes, sir. I think the only defense that we had entered at the trial, which the jury found insufficient, was that he believed he was acting under his attorney's advice not to sign this document. Now, at the trial, the attorney, a fairly well-known, well-respected immigration attorney, said, well, I did not tell him not to sign. I told him to use basically his judgment. And I understand that. What attorney is going to get up on the stand and say, yes, I told him to violate the law? Okay. But let's say that was not a proper defense. That is still something I think, I believe, I respectfully urge on this court, that the sentencing court should have taken also into account. The fact that this is not the type of crime that he was accused of is not the type of crime that deserves five years in federal prison. Five years, eventually. Now, yes, he could have gotten much worse. He could have gotten 77 months. But, in fact, he got five years for saying to an immigration agent, no, I'm not going to sign that. He could have gotten more than 77 months. Yes, sir. He could have gotten more than 75. What is the statutory maximum? The statutory maximum for that, I believe, was 20 years because it's a deportation. And as I said, he was not priorly – normally it's an illegal reentry after a prior deportation. It's a two-year maximum. But then if you've been deported as a result of a crime of violence or certain other enumerated crimes, that maximum then jumps to 20 years. The Sentencing Commission, on its own, in the sentencing guidelines, their base offense level for illegal reentry is a level eight. And the Sentencing Commission, I believe arbitrarily, puts in a specific offense characteristic of plus 16 if you were previously convicted of a crime of violence, which Mr. Calderon Menchola had been previously convicted of a crime of violence, which was the reason he was stripped of his legal residency and eventually given an order of deportation. Did he have a Category 4? Yes, sir. He did have a Category 4. Which is pretty serious. Yes, it is. But if you will look at the record, the Category 4 is achieved as following. He has the aggravated assault conviction in Philadelphia. And then on top of that, because his refusal to sign this document, in other words, the instant offense, occurred within two years of his release from prison, which was 42 months. While he was still on parole? Yes, sir. Well, no, actually what happened is he had been on parole and then he was immediately arrested by immigration so they could start the deportation proceedings. So, I mean, technically was he on parole? Yes, but he was really in the custody of immigration. Well, he went to the probation officer when immigration served him with it. Yes, sir. He has been a model prisoner at all times. Here's a man that, if you look at the record, was a great citizen. In fact, he says himself, I thought mistakenly that I behaved like a U.S. citizen. I paid taxes. I worked. I had children. You know, he has two minor criminal contacts very early in his life, at least 10 years earlier than the conviction that he gets here in Philadelphia. Even though the sentence in court below mentions those two criminal matters for which I believe he gets zero points as part of his reason not to grant a downward departure and obviously not to exercise his rights. Does he speak Spanish? Yes, sir. He does, but he speaks English fluently. He's fine in English. He's basically been here since he was three. Yes, sir. He does not speak Spanish well, but he speaks Spanish. Your Honor, I see that I'm out of time. We'll get you back from rebuttal. You served quite a bit of time. Thank you, sir. Good morning. My name is Darrell Bloom, and I represent the United States Attorney's Office in the Middle District of Pennsylvania. Just to Judge Seiler to correct the record regarding the statutory maximum, for this offense it would actually be 10 years for the hindering removal, 20 years for an illegal reentry with an aggravated felony conviction. As counsel has conceded that there's no jurisdiction to address the downward departure issue, I would submit to the court that the issue before this court is very narrow. It's whether or not the district court's determination or sentence in this particular case is reasonable. It's reviewed under the abuse of discretion standard, and essentially this court should exercise great deference in making the decision. Why is it reasonable to give this guy in these circumstances a five-year sentence? Why is that reasonable? Well, I think there are several factors. I think the fact of the matter is, and no one can dispute this, is that the defendant brought a baseball back to a fight and someone died. That's one of the underlying convictions, the aggravated assault. That's what gave him the 16-level increase in the offense level that brought him to and provided some of the points regarding the criminal history as well. He got a two-and-a-half to 10 for that. I assume at the time that that happened that was what an aggravated assault, a second-degree felony or a first-degree felony? Do you know how it was charged? I'm not sure what in the state of Pennsylvania it would have been. Okay. Well, if it was a second-degree felony back then, I think it would have been five to 10. So he got two-and-a-half to 10 for that. It looks like he was let out close to his minimum, which doesn't really matter. But when you look at the nature of the offense, it just seems so easy, and maybe it goes back to Mr. Bosch's argument. If we have the statutory sentencing scheme, pursuant to which you start at the guideline number and then work upward or work downward, depending on the individual factors as incorporated through 3553A, you may come to one result, say result X. If, however, you look at the guideline determination, which the court has to calculate and factor that in as simply one of several 3553A factors, so there's no numerical starting line, but consider that as one of the considerations factored in, as one of the considerations along with the other thing in 3553A, it seems to me you get to a very different result, and I can't help but think that result is result Y. It seems like the five-year sentence here is an outgrowth of starting with the mathematical calculation of the guidelines and then working down based upon the equities, which in and of itself may not be unreasonable. It seems like the sentencing judge did try to do something in consideration for Mr. Calderon-Manchola's background, but when you look at the end result, five years for not signing a piece of paper that basically would have removed himself from his family and his kids, taken him to a country which he really had no contact with, for all intents and purposes, the only country he really knew was the United States, and he gets five years, that doesn't kind of strike you as violating what my old contract professor would say of the rule of horse sense, that it ought to have at least a kernel of horse sense in it when you look at it. Does that have a kernel of horse sense in it? Well, I understand what the courts indicated. I think based upon the factors, the 3553A factors, it is reasonable. Taking into consideration, for example, the deterrence, if individuals were to blanketly refuse to sign their travel documents, quite literally the United States would be stuck with individuals who are subject to mandatory detention, such as Mr. Calderon-Manchola, virtually for an indefinite period of time. Yeah, but you have to, under 3553A, you have to impose the minimum sentence that would achieve deterrent. You could argue that five years, anything less than five years, would not deter. Certainly there's arguments, and I think what we have here is that certainly the defendant's objection to the sentence that was imposed can't do substitution and can't be substituted for the district court's determination based upon all the factors. The district court, there's no question that there's nothing in the record that was not considered and viewed by the district court. In fact, what we have is a 30-page sentencing memorandum, quite thorough, and noted to be quite thorough by the district court judge that he reviewed it. And he goes down through all those factors. The district court commented about the defendant's criminal record. It's an individual with four convictions. In fact, he was convicted of DUI while awaiting a new trial for the aggravated assault, the simple assault, possession of a serious crime, criminal conspiracy conviction. And I don't want to minimize the DUI because heaven knows it's dangerous, and I don't know the facts of that case, but DUIs are the kinds of cases that can, regardless of the intent of the driver, end up in somebody getting killed. They're incredibly serious offenses, and the law has finally come around to recognizing them as serious offenses. But in terms of his, the kind of person we're looking at with this defendant, as Mr. Bosch said, he did not take a gun and rob somebody. He wasn't out there pushing drugs. It's not a rape, not even a retail theft. And I don't want to minimize retail thefts, but clearly on the scale of evils, they've got to rank in a different category than rape or robbery or even ag assault, which is his underlying offense. It's the kind of offense that probably 90% of the eligible drivers in the United States, if they were stopped at the right time, would be guilty of, leaving a party or leaving a family Thanksgiving dinner and having a glass of wine and an empty stomach. It's the kind of offense that anyone but for circumstance might be guilty of. And again, I don't want to minimize it because it can lead to very tragic consequences. But I'm just looking at the 3553A mandate of parsimonious sentencing. And you may be right. Maybe this is the kind of thing where, and we often see these cases where the reviewing court would say, well, I wouldn't have done this, but it's not an abuse of discretion or it's, but it's not unreasonable. And maybe that's what we have here. But it just seems like five years for this kind of an individual is really killing this mosquito with a shotgun. I know we probably disagree on that, but it's just, the only way, maybe you agree with this, maybe you don't, but it does seem like the court here started from these mathematical calculations of the guidelines and then worked down. It seems to me that's the only way you can justify five years here. And under Cooper, that may present a problem in and of itself. I don't know. It's something we'll have to think about. But does this sentence strike you as one that was achieved after starting from the designation or the calculation of the sentencing guidelines and then adjusting to that, either going up or down based upon the guideline range? Well, I think that if you review the district court's decision, what is clear, and I'm not sure exactly what the district court and how he arrived at that, but I think it is clear that he considered that to be one factor. I don't know necessarily that he started from there and went down, but it's very clear from the record, there's no question that he did consider that to be a factor. And it has to be, and that's not wrong. He has to consider it as a factor. I think one thing that should be noted and stated is every governmental agency along this torturous way, every court acted with reason and strict application of the law and with no prejudice. Every court was correct and proper within its brief. And in case you're wondering where that came from, that didn't come from the government's brief. That came from the defendant's brief at pages 26 to 27. And I absolutely agree with that. So read that again, please. Every governmental agency along this torturous way, every court acted with reason and strict application of the law and with no prejudice. Every court was correct and proper within its discretion. And I have to agree, and not only do I agree, I think that pretty much on the standard of reasonableness, that pretty much is the defendant conceding that we win. Every court acted with reason. We're here with a reasonableness standard, and I think counsel has conceded that today. Initially when the brief was filed, it had indicated that the standard was plenary in their brief, and that's absolutely not true. The standard is reasonableness. Was it an abuse of discretion? And, again, I think that there should be great deference to the district court's decision, the court noting the defendant's criminal history, noting that the incident of offense was committed while he was on parole, the fact that the district court, and I think this is important, under Cooper, the court's required to give meaningful consideration to the relevant factors and then whether those factors are reasonably applied. Here, there's no question that the court gave meaningful consideration. In fact, the court specifically referenced all of the points that are noted in the brief, and it's further evidenced by the fact that the court did sentence the defendant to 60 months. So there is a variance of the 17 months, a full 17 months less than the low end of the otherwise applicable guidelines range. And then based upon the criminal history and the incident of offense was committed while the defendant was on parole, again, those are the reasons that the district court determined that a 60 months sentence was appropriate. The district court very clearly, and it's in the record at page 459, considered every one of the 3553A factors, the deterrence, the just punishment, the protection of the public, the unwanted sentence disparities, the nature and seriousness of the offense, the history of the defendant, his contact with the criminal justice system, his likelihood of recidivism, and that was one of the things that the district court had specifically noted. The fact that he committed the present offense while under supervision. He committed it within two years of release from his Philadelphia conviction. What happens when he gets released? Will he automatically be deported? Essentially, what will happen is he'll return to the state that he was in before he was convicted of this offense or brought into federal custody. He'll go back into immigration custody. He'll be asked again to sign the request for travel documents. And if he doesn't do it, he gets sentenced again, I guess. If he doesn't do it, he certainly would be in violation, I think, of the law again. What would happen, I just don't know at that point.  But certainly he would go back into immigration custody and they would try and remove him again based upon this particular conviction. In fact, as you just read, committing the instant offense while on probation, committing it within two years of being in custody, all of those things, it seems to me, were put into guideline considerations and the kind of thing any sentencing judge would consider with or without sentencing guidelines because it goes to the level of culpability, the level of social conformity of the individual accused. So if you get somebody, for example, in a usual case, who commits a robbery within two years after having just gotten out of prison, that shows you this is someone who, I think the expression of the cases in the older cases, has hardened his back, at least the old Pennsylvania cases used to say that, has hardened his back against the law. Someone who, on the level of culpability in terms of sentencing, is more likely to be a recidivist, is therefore a bigger danger to the community, it is therefore more appropriate to focus more on incapacitation than any of the other sentencing factors. But as I read those factors, it just doesn't seem to fit to this kind of an offense in this situation. To say that he did this within two years of being released from prison, you could have given him the same form within a day of being sentenced to prison, if he had to self-report, for example. He still would have had the same two kids that he knew he was going to be separated from if he signs this paper. He'd still be signing a piece of paper that basically, in his own mind, no doubt, allowed the government, probably he recognized it as his government, to be removed from his country. It doesn't have the same ring to it as somebody who sticks up a liquor store after having just been released for committing a burglary. I understand they're there, and I say that because it seems to me the sentencing judge has to think for himself or herself the extent to which those menus of sentencing factors apply in a particular case, because they don't always apply. To apply them the same, kind of in an Excel spreadsheet kind of formula in every single case, regardless of the individual circumstances of the defendant, seems to run afoul of 3553A. I cannot help but imagine that Judge Hinojosa, if he heard that, would agree with that. I can't speak for him. He's the chair of the Sentencing Commission. But I have some background on how sentencing guidelines are put together. And I cannot imagine the Sentencing Commission intended that rigid formula, which makes sense in almost all cases, and as I said, it's the kind of thing a judge is going to do even without a guideline. To apply it here, I'm just not sure if it is reasonable. I just don't know. Well, I think one thing that's clear is that it was uncontested what his criminal history was in the offense level by both parties. And the judge then adopted that. Yeah, the guideline calculation is correct. I think here what we have is an individual. And I would have to agree with the court. I think it's very clear that this is different from someone who held up a liquor store or committed an armed bank robbery. It's certainly separate and distinguishable from a lot of those offenses. Counsel had pointed out that it's not violent. It didn't involve terrorism or pornography. But what we have is we have an individual, and I think taking into consideration all of those factors, the underlying offense, and again, there's no dispute that with a baseball bat, there was a fight and someone died. That's what gave him the offense level that he had of the offense level of 25. And that was a trial or was that a guilty plea? That was actually a trial. Because it seems to me when I read that, it sounded like third-degree murder or third-degree homicide. Yeah, it would be murder to a third degree. Killing in the exercise of wanton malice conduct but in the absence of a specific intent to kill and in circumstances that didn't amount to a felony murder would be third-degree murder. It sounded like that was, as we used to say, an aggravated assault where someone dies. Then converts to a third-degree murder. But if he's convicted of aggravated assault, not third-degree murder, and we can't, I don't know how much you can read into that because the facts are not before us, and heaven only knows what was in the jury's mind. But again, this strikes me as a very different kind of defendant than somebody who has a history of wanton violence and then engages in this kind of criminal conduct. It's a difficult case. I see my time is up. Anything else you want to tell us at all? Again, I just, I would refer the court to the standard is whether or not it's reasonable. It's based upon a review of abuse of discretion should the court determine that. I think it's very clear that the deference should be to the sentencing court who had an opportunity to consider the defendant, to see the defendant, to look at all the factors and to look very much in detail. In fact, the sentencing court was the trial court as well. So there was a greater exposure to the defendant, his characteristics, and all the factors certainly that should be reviewed by the court. Okay. Mr. Bloom, thank you very much. Mr. Washoe, is there a chunk of time? Thank you, Your Honor. And one of the things that Your Honor's question about whether he is going to be deported, of course he is going to be deported. If you look at the trial record, one of the things that we brought out is that the reason he does not sign the document for his deportation, and technically what it is is that the country of Peru wants an application for a passport so that they will accept him back. And again, to a country that he hasn't been to since he was two years old. He has no family there. How old is he now? He is in his 30s, 35, 36, 37. He spent his entire life in the United States. A lot of these seem to be very harsh just like the illegal reentry, but they get ratcheted up every time somebody comes back in the country and gets removed again. Yes, sir. You have a lot of time and they are always deported when their time is up. I understand, sir. We spend money to put them in. We spend money to hold them in prison for five years or something like that. And one of the things he says at the trial is the reason he does not sign is A, because he believes he is acting on his attorney's advice, but B, the reason for that is because he wants to make sure that this habeas corpus proceeding here is heard, that his proceeding on the appeal on the deportation order is heard. There used to be a time when people were not deported, when they had those ancillary proceedings, and then I don't remember now, about five, six, seven years ago, Congress changed the law basically saying, no, you can be deported while your appeals are going on. And then there was a question of whether or not those appeals would survive once you were deported. So he's trying to protect his civil rights. He says at the trial, if I lose my habeas corpus, which he has. Has he got a habeas corpus proceeding now? No, sir. It was denied by the magistrate, it was denied by the district judge, and I believe at this point it was denied by the Third Circuit. He's basically said, I don't want to stay in prison, but I feel guilty because where this court to grant the relief, which I am asking, all I'm doing is forcing him out of the country that much earlier. Is it better for him to spend 60 months in a federal prison away from his family, or is it better for him to be deported to a country away from his family? But that's not the issue. The issue we have is whether or not it was reasonable for the sentencing judge to do something that had no effect. And so what I'm saying is he is going to be deported. It's not like he's going to be allowed. So in terms of protection of the public, for example, that should not have entered. I mean, it should have been considered by the court, but it's not a very reasonable option. But Mr. Bloom didn't rely upon any of those things. He just said straight punishment. Now, and here's a question, I guess, that I have, and Mr. Bloom quoted this statement. I said that courts below acted with reason. But if you act with reason to reach an unreasonable result, what then? Is that not reviewable? How do you do that? How do you – isn't it – it's the process. Maybe you're saying the process is reasonable, but the end result is not reasonable. Yes, sir. And maybe part of this is a sentencing court is saying I am acting with reason. I am exercising my discretion to act with reason. But in fact, unconsciously or consciously, and that I can't tell, you're reaching an unreasonable result. And here's the question. The court is supposed to consider, and it does consider, the five factors of 3553A. But my argument to this court is that it unconsciously placed much more emphasis on the factor of the sentencing guideline. I think it started out from 77 and went below. When it should have placed much more emphasis on the specific circumstances of the crime and of the specific circumstances of this defendant. This is an extraordinary case. Which particular factor on the 3553A did you think the court did not pay attention to? I think it's the first one, Your Honor. 5553A1. I don't have the – Did the court say it did? It said it did pay attention to it. But all I'm saying is when the result is unreasonable, even after somebody says I've acted with reason and this is the result, but the result you can review as patently unreasonable. What do you think a reasonable sentence would be in this case? Your Honor, at that point I had asked for a sentence of time served, which was about 15 months, which he had served. And again, remembering that he's not going to be allowed into the population. He's going to be deported. Was that a prison term? Yes, he's been in prison for – well, he was in immigration custody for about a year, a little bit less than a year, from the time that he was arrested by immigration to the time of this incident. And then by the time we got to sentencing, I believe it was another year at least, if not more. In fact, it may have been about 15 months. And please forgive me. I don't know exactly that period of time. So for the immigration, he'd been in jail for at least two and a half years. Then the judge imposed 60 months, so it meant he had to be in jail for another two and a half years at least. What I'm saying is – and for example, Your Honor, had the judge – had the sentencing court below sentenced him to 24 months, and I came here and said, no, should have sentenced him to 23 months. All right, reasonableness and the range of reasonableness probably doesn't cut that exactly. But five years, 60 months for what this defendant, this specific defendant did, I'm saying it's unreasonable. I am saying that it's within your power to review that, even though the sentencing court below has stated, I've considered all the factors and this is my sentence. Because the sentence itself is obviously unreasonable.